**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

104-106 1st PLACE CORPORATION        :
                                      :        CIVIL ACTION

            v.                               :

                                        :        NO. 22-4968

HARLEYSVILLE WORCESTER          :
INSURANCE COMPANY                    :

<u>**MEMORANDUM**</u>

**SURRICK, J.**                                                                  **MAY 8, 2024**

Presently before the Court is Plaintiff's Motion for Leave to Amend to Reassert a

Statutory Bad Faith Claim and Amend First Amended Complaint. ("Fifth Motion to Amend,"

ECF No. 35.) For the following reasons, Plaintiff's Motion will be denied.

**I.    BACKGROUND**

    **A.    Facts**[1]

This lawsuit stems from an insurance coverage dispute between Plaintiff and Harleysville

Worcester Insurance Company ("Harleysville"), which issued a commercial property insurance

policy (the "Policy") to Plaintiff in connection with the renovation of a building Plaintiff owns in

Brooklyn, New York (the "Property"). (*See* Am. Compl. ¶¶ 1, 4; Policy application documents,

ECF No. 5-1, at 17, 24, 30.)[2] Plaintiff alleges that in February 2021, it discovered that the

Property "had suffered loss and damage caused by collapse resulting from the negligence of a

---

[1] The factual background is taken from Plaintiff's Amended Complaint ("Am. Compl.," ECF No. 5), proposed Fifth Amended Complaint ("Proposed Compl.," ECF No. 5-1), and the exhibits attached thereto. Record page number citations apply ECF pagination.

[2] Plaintiff's Amended Complaint alleges that the Policy is attached thereto as Exhibit P-1 (*see* Am. Compl. ¶ 5); however, Exhibit P-1 contains 29 pages of Policy application documents. (*See* ECF No. 5-1.) The Policy is attached as Exhibit P-1 to Plaintiff's Proposed Complaint. (*See* ECF No. 35-2.)

third-party contractor" hired by Plaintiff (the "Loss").  (Am. Compl. ¶¶ 6, 9; *see also* Proposed

Compl., Count I ¶ 6, Count 2 ¶ 4.)

Harleysville denied coverage for the Loss in a letter to Plaintiff's counsel dated July 21,

2022.  (Denial, Am. Compl. Ex. P-3, ECF No. 5-4.)  With regard to the basis for its decision, the

Denial stated:

> Based on our investigation and review of your policy contract. Harleysville
> Worcester Insurance Company's opinion is this loss was caused by deficiency in
> design or specifications, faulty, inadequate or defective workmanship and or
> construction. We must respectfully advise you that your policy number
> CIM0000008470BJ does not provide coverage for this loss. . . .
>
> Our investigation indicates that per the investigation and analysis completed by a
> Professional Engineer of Donan Engineering, the removal of large sections of the
> wood joists without the interspersion of newly installed steel channels or bracing
> indicates the inadequate construction sequencing structurally compromised the
> townhouse during the renovation.  In addition, the snow loads on the property at
> the time of failure were insignificant to cause damage to a structurally sound
> structure.

(Denial at 3.)

The Denial quotes certain Policy provisions, including the exclusions at sections B.2.m.

and B.3.c., which state, in relevant part:

> We will not pay for "loss" or damage caused by or resulting from any of the
> following:
>> m. Error, omission, or deficiency in design or specifications. But we will pay
>> for direct "loss" caused by resulting fire or explosion.
>
> * * *
> We will not pay for "loss" or damage caused by or resulting from any of the
> following.  But if "loss" or damage by a Covered Cause of Loss results, we will
> pay for the "loss" or damage caused by that Covered Cause of Loss.
>> c. Faulty, inadequate or defective:
>>> (1) Planning, zoning, development, surveying, or siting;
>>> (2) Workmanship, repair, construction, renovation, remodeling, grading,
>>> compaction;
>>> (3) Materials used in repair, construction, renovation, or remodeling; or
>>> (4) Maintenance;
>> Of part or all of any property wherever located.

(*Id.* at 4-5; Policy §§ B.2.m., B.3.c.)  With respect to the defined terms referenced in the Denial, the Policy provides that "Covered Causes of Loss means Risks of Direct Physical 'loss' or damage to Covered Property, except those causes of loss listed in the Exclusions."  (*Id.* at 4; Policy § A.3.)  The Policy defines "loss" as "accidental loss or damage."  (Policy § F.6.)

In response to the Denial, Plaintiff's counsel sent a letter to Harleysville asserting that Harleysville's stated reason for the Denial was the faulty workmanship referenced in Donan Engineering's investigation and analysis.  (Pl.'s Coverage Letter, Am. Compl. Ex. P-4, ECF No. 5-5.)  Plaintiff's Coverage Letter further stated:

> The above work was performed by an independent contractor hired by the insured so your conclusion is the loss was caused by the negligence of the contractor.  In other words the loss was caused by the third party negligence of the contractor.
>
> I have attached to this letter a number of cases which hold that that third party negligence causing a loss covered by an allrisk policy[.]

(*Id.*)  The five-page attachment to Plaintiff's Coverage Letter contains the Pennsylvania Superior Court's opinion in *Raybestos-Manhattan, Inc. v. Indus. Risk*, 433 A.2d 906 (Pa. Super. Ct. 1981), and brief summaries of three cases from other jurisdictions.  (Pl.'s Coverage Attachment, Am. Compl. Ex. P-5, ECF No. 5-6.)

### B.      Procedural History

Plaintiff commenced this lawsuit in the Philadelphia Court of Common Pleas, and Harleysville removed it to this Court.  (*See* ECF No. 1.)  The same day that it removed the case, Harleysville filed a Motion to Dismiss Bad Faith Claims and to Strike Impertinent Matter in Plaintiff's Complaint.  (ECF No. 3.)  Plaintiff then filed the Amended Complaint, asserting a count for "Compensatory Damages" and a count for "Bad Faith Damages" (*see* Am. Compl.), and Harleysville again moved to dismiss the bad faith claims and strike impertinent matter from

the Amended Complaint.  (ECF No. 6.)  Harleysville did not seek dismissal of Plaintiff's claim

for compensatory damages asserted as Count 1 in the Amended Complaint.

On August 2, 2023, we dismissed without prejudice Plaintiff's statutory bad faith claim

and demands for relief asserted pursuant to 42 Pa. Stat. and Cons. Stat. Ann. § 8371 ("§ 8371"),

finding that the First Amended Complaint "fail[ed] to allege specific facts necessary to state a

plausible bad faith claim." (Aug. 2, 2023 Order, ECF No. 15, at ¶ 1, n.1.)  The August 2, 2023

Order permitted Plaintiff to "seek leave to amend to reassert a statutory bad faith claim, *which*

*must contain specific allegations to support that claim under the applicable pleading*

*standards noted above*." (*Id.* at n.2. (emphasis added).)  The August 2, 2023 Order also

dismissed with prejudice Plaintiff's bad faith claim and demands for relief asserted under

Pennsylvania's Unfair Insurance Practices Act and struck with prejudice Plaintiff's demands for

treble damages and attorney's fees under Pennsylvania's Unfair Trade Practices and Consumer

Protection Law.  (*Id.* ¶¶ 2, 3, n.1.)

On August 7, 2023, Plaintiff filed a motion for leave to amend to reassert a statutory bad

faith claim, which did not attach a proposed amended complaint.  ("First Motion to Amend,"

ECF No. 16.)  On August 17, 2023, Harleysville filed its opposition to the First Motion to

Amend (ECF No. 17), Plaintiff withdrew that motion as "filed in error" (ECF No. 18), and

Harleysville filed its Answer to the First Amended Complaint, noting that the "Bad Faith

Damages" alleged in Count 2 were dismissed by the Court's August 2, 2023 Order.  (ECF No.

19.)

On August 23, 2023, Plaintiff filed a Second Motion to Amend and again failed to attach

a proposed amended complaint.  (ECF No. 21.)  The next day, Plaintiff separately filed a second

amended complaint, which included a § 8371 bad faith claim, and a proposed order granting the

Second Motion to Amend.  (ECF Nos. 22, 23.)  On August 24, 2023, Harleysville filed its

opposition to the Second Motion to Amend (ECF No. 24.)  On September 3, 2023, while the

Second Motion to Amend was pending, and without leave of Court, Plaintiff filed a purported

third amended complaint.  (ECF No. 25.)  Two days later, Plaintiff withdrew the third amended

complaint as "filed in error."  (ECF No. 26.)  On September 11, 2023, Harleysville filed a motion

to dismiss the second amended complaint as premature, noting that Plaintiff filed it without leave

of Court.  (ECF No. 27.)  The next day, Plaintiff filed its response to Harleysville's motion,

agreeing that the second amended complaint should be dismissed.  (ECF No. 28.)

On October 6, 2023, Plaintiff filed a Third Motion to Amend, again without a proposed

amended complaint, then, the same day, withdrew that motion as "filed in error" and filed a

Fourth Motion to Amend with a proposed amended complaint attached.  (ECF Nos. 30-32.)  On

October 9, 2023, Harleysville filed its opposition to the Fourth Motion to Amend, asserting that

the proposed amendment was futile because it lacked any "factual allegations concerning the

handling of the claim" and contained only broad legal conclusions that would not survive a

motion to dismiss.  (ECF No. 33 at ¶ 2.)  On October 13, 2023, Plaintiff withdrew the Fourth

Motion to Amend as "filed in error" and filed the Fifth Motion to Amend and Proposed

Complaint that are presently before the Court.  (ECF No. 34.)

## II.     LEGAL STANDARDS

### A.     Leave to Amend

The decision whether to grant or to deny leave to amend rests within the sound discretion

of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to amend shall be "freely

give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Rule 15(a) embodies the federal

courts' policy of liberal pleading amendment" by "'enabl[ing] a party to assert matters that were

overlooked or were unknown at the time the party interposed the original complaint.'"  *Garrett v.*

*Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 C. Wright & A. Miller, Federal

Practice and Procedure § 1473 (3d ed. 2019).)  However, leave to amend is properly denied

when amendment would be futile.  *Garvin v. City of Phila.*, 354 F.3d 215, 222 (3d Cir. 2003);

*see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could

justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and

futility." (citation and internal quotation marks omitted)).  A proposed amendment is futile if the

pleading, as amended, "would fail to state a claim upon which relief could be granted" under

Federal Rule of Civil Procedure 12(b)(6).  *Shane*, 213 F.3d at 115 (citation omitted).

Accordingly, courts assess whether a proposed amended complaint is futile under the standard

applicable to a Rule 12(b)(6) motion to dismiss.[3]  *See Maiden Creek Assocs., L.P. v. U.S. Dep't*

*of Transp.,* 823 F.3d 184, 189 (3d Cir. 2016).

### B.     Bad Faith

"The standard for pleading a bad faith insurance claim requires an insured to demonstrate

that: '(1) the insurer lacked a reasonable basis for denying benefits; and (2) [ ] the insurer knew

or recklessly disregarded its lack of reasonable basis.'"  *Rickell v. USAA Cas. Ins. Co.*, No. 18-

1279, 2018 WL 5809865, at *2 (M.D. Pa. Nov. 6, 2018) (quoting *Klinger v. State Farm Mut.*

*Auto Ins. Co.*, 115 F. 3d 230, 233 (3d Cir. 1997)).  To allege a plausible claim under § 8371, "[a]

plaintiff must plead specific facts as evidence of bad faith and cannot rely on mere legal

---

[3] Under the Rule 12(b)(6) standard, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *New Jersey Carpenters & the Trs. Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a proposed amended complaint, the court considers only the pleadings and "document[s] integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation and citation omitted).

conclusions." *Id.* (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 Fed. App'x 133, 136 (3d

Cir. 2012).)  "[A] 'mere averment that an insurer had no reasonable basis for refusing to

reimburse a plaintiff is a conclusory legal statement, not a factual allegation.'" *Williams v. State

Farm*, No. 21-58, 2021 WL 2661615, at *4 (E.D. Pa. June 29, 2021) (quoting *Kelley v. State

Farm Fire & Cas. Co.*, No. 19-626, 2019 WL 2425135, at *2 (E.D. Pa. June 10, 2019)); *see also*

*Rohrbach v. Liberty Mut. Ins. Co.,* No. 21-2031, 2021 WL 9036598, at *1 (E.D. Pa. Oct. 21,

2021) ("To survive dismissal, Plaintiff must raise allegations 'from which the Court can

plausibly infer that [the insurer] knew or recklessly disregarded a lack of a reasonable basis to

deny benefits.'" (quoting *Brown v. LM Gen. Ins. Co.*, No. 21-2134, 2021 WL 2333626, at *3

(E.D. Pa. June 7, 2021)).)

"A reasonable basis is all that is required to defeat a claim of bad faith." *Post v. St. Paul

Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012) (citation and internal quotation omitted).

An insurer's refusal to pay a claim when it disputes the insured's entitlement to coverage "is not

evidence of unreasonable conduct that would support a bad faith claim." *Brown*, 2021 WL

2333626, at *3.  Moreover, "[e]ven if the insurer's position on coverage ultimately turns out to

be erroneous, no claim will lie for bad faith if the insurer's position was objectively reasonable."

*Krueger v. GEICO Cas. Co.*, No. 19-279, 2020 WL 13880662, at *10 (W.D. Pa. Sept. 28, 2020)

(citing *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)).

## III.    DISCUSSION

Plaintiff's amended bad faith claim is deficient in several respects.  First, the Proposed

Complaint does not add any specific factual allegations supporting a plausible inference of bad

faith.[4]  Instead, Plaintiff's allegations merely restate or quote from its Policy interpretation and

---

[4] The Proposed Complaint also omits the conclusory factual allegations we found insufficient in the Amended Complaint.  (*See* Am. Compl. ¶ 14.)

the caselaw set forth in its Coverage Letter and Coverage Attachment sent to Harleysville in response to the Denial.  (*See* Proposed Compl., Count 2 ¶¶ 4-9; *see also* Am. Compl. Exs. P-4, P-5; Proposed Compl. Exs. P-4, P-5.)[5]

As noted above, Harleysville's Denial stated that per the engineering investigation and analysis it obtained, the loss "was caused by deficiency in design or specifications, faulty, inadequate or defective workmanship and or construction," which are not covered under the Policy.  (Denial at 3.)  The Denial cited the Policy provisions excluding coverage for "'loss' or damage caused by or resulting from . . . [e]rror, omission, or deficiency in design or specifications" (*id.* at 4; *see also* Policy § B.2.m.) and for "'loss' or damage resulting from . . . [f]aulty, inadequate or defective . . . "[w]orkmanship, repair, construction, renovation, remodeling, grading, compaction."  (*Id.* at 4-5; *see also* Policy § B.3.c.)  The latter exclusion provides that "if 'loss' or damage by a Covered Cause of Loss results, we will pay for the 'loss' or damage caused by that Covered Cause of Loss."  (*Id.* at 4.)

Plaintiff's bad faith claim is based solely on the theory that Harleysville lacked a reasonable basis to deny Plaintiff's claim, and it relies on conclusory allegations that:  (1) quote excerpts of Harleysville's denial; (2) state that "Harleysville's opinion is this loss was caused by Faulty Workmanship of [Plaintiff's] independent contractor"; (3) quote the portion of Policy § B.3.c. referring to "'loss' or damage caused by [a] Covered Cause of Loss"; (4) state that "the file containing the cases which hold that third party negligence, a Covered Cause of Loss, causing a loss is covered by an all-risk policy is attached as Exhibit 'P-4'"; and (5) quote at

---

[5] Plaintiff's Proposed Complaint states that the Coverage Attachment is attached as Exhibit P-4. (Proposed Compl. ¶ 6.)  However, Exhibit P-4 is Plaintiff's Coverage Letter, a duplicate of which is also attached as Exhibit P-5.  (*See Id.* ¶ 11, ECF Nos. 35-5, 35-6.)

length from the 1981 *Raybestos* opinion, 433 A.2d 906.  (Proposed Compl. Count 2, ¶¶ 9, 4-9.)[6]

Based on the foregoing, Plaintiff alleges that "Harleysville knew that it lacked a reasonable basis

in denying [Plaintiff's claim] because [Plaintiff's counsel] sent a letter to Harleysville explaining

why it lacked a reasonable basis" to deny the claim.[7]  (*Id.* at ¶ 11.)

These allegations are insufficient and "boil down to a legal conclusion [that

[Harleysville] denied coverage that Plaintiff believed [it] was entitled to, thus acting in bad

faith."  *Dietz v. Liberty Mut. Ins. Co.*, No. 20-1239, 2020 WL 7769933, at *2 (E.D. Pa. Dec. 30,

2020).  We need not credit such "bald assertions or legal conclusions."  *Atiyeh v. Nat'l Fire Ins.*

*Co. of Hartford*, 742 F. Supp. 2d 591, 600 (E.D. Pa. 2010); *see also Williams v. State Farm*, No.

21-58, 2021 WL 2661615, at *4 (E.D. Pa. June 29, 2021) ("[A] 'mere averment that an insurer

had no reasonable basis for refusing to reimburse a plaintiff is a conclusory legal statement, not a

factual allegation.'" (quoting *Kelley*, 2019 WL 2425135, at *2)).

Second, the fact that Plaintiff disputed Harleysville's coverage determination does not

demonstrate that it was unreasonable, even if, at a later stage of the case, Plaintiff prevails on its

coverage interpretation.  *See, e.g.*, *Brown*, 2021 WL 2333626, at *3 ("An insurer's refusal to pay

the policy limit when it disputes that the insured is entitled to any such coverage at all is not

evidence of unreasonable conduct that would support a bad faith claim."); *Krueger*, 2020 WL

13880662, at *10 ("Even if the insurer's position on coverage ultimately turns out to be

erroneous, no claim will lie for bad faith if the insurer's position was objectively reasonable.");

*see also Hentz v. Allstate Prop. & Cas. Ins. Co.*, No. 19-2007, 2020 WL 509162, at *3 (E.D. Pa.

---

[6] Due to an apparent numbering error, Paragraph 9 appears twice in Count 2 of the Proposed Complaint.

[7] Plaintiff's Proposed Complaint contains no allegations challenging Policy § B.2.m. as a basis for Harleysville's denial of coverage.

Jan. 31, 2020) (granting summary judgment to insurer on bad faith claim and noting that "the

mere fact that the parties disagree about coverage is not enough to show bad faith" (citing *Post*,

691 F.3d at 524 (affirming summary judgment on a bad faith claim when the plaintiff could only

show the parties disagreed about coverage))).

Third, and contrary to the apparent theory of Plaintiff's allegations, its unilateral coverage

opinion is insufficient to plausibly allege that Harleysville denied coverage in bad faith.  The

cases cited in Plaintiff's allegations and its Coverage Attachment are not controlling, do not

address the faulty workmanship exclusion or Covered Cause of Loss language at issue here, and

do not hold that otherwise excluded loss is automatically covered if it is caused by the faulty

workmanship or other negligence of a subcontractor.[8]  Moreover, Plaintiff's conclusory

allegations that Harleysville lacked a reasonable basis for its coverage denial cannot sustain a

bad faith claim where courts applying Pennsylvania law have upheld the application of the faulty

workmanship exclusion to claims similar to Plaintiff's.  *See*, *e.g.*, *Jones v. Allstate Prop. & Cas.*

*Ins. Co.*, 552 F. Supp. 3d 498, 503 (E.D. Pa. 2021) (holding that insurer properly invoked faulty

workmanship exclusion to deny coverage for damage to adjacent parts of property caused by

defective work of contractor hired to repair driveway ); *L.F. Driscoll Co. v. Am. Prot. Ins. Co.*,

930 F. Supp. 184, 187 (E.D. Pa. 1996) (holding that all-risk policy's faulty workmanship

exclusion applied to loss resulting from negligent work of subcontractors, and noting that it was

---

[8] *See Raybestos*, 433 A.2d at 908) (concluding that contamination exclusion did not preclude coverage for loss that directly resulted from a "non-excluded, external cause"); *see also Safeco Ins. Co. of Am. v. Guyton,* 692 F.2d 551, 555 (9th Cir. 1982) (reversing decision applying flood exclusion to bar coverage for loss proximately caused by third-party negligence, but affirming district court's dismissal of bad faith claim against insurer); *Jussim v. Massachusetts Bay Ins. Co.*, 610 N.E.2d 954, 958 (Mass. 1993) (holding that pollution exclusion did not bar coverage where proximate cause of loss was non-excluded antecedent negligence at neighboring property); *State Farm Fire & Cas. Co. v. Von Der Lieth*, 820 P.2d 285, 292 (Cal. 1991) (holding that exclusion for loss caused by earth movement or natural ground water did not apply where third-party negligence was the efficient proximate cause of loss).

"irrelevant" that negligence was that of subcontractor rather than general contractor ), *aff'd without op.*, 114 F.3d 1172 (3d Cir. 1997).[9]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Fifth Motion to Amend will be denied.  Further, because Plaintiff has had multiple opportunities to cure the deficiencies with respect to this claim but has failed to do so, further amendment would be futile, and Plaintiff's bad faith claim will be dismissed with prejudice.  An appropriate order follows.


                                                                    BY THE COURT:



                                                                     */s/ R. Barclay Surrick*
                                                                    **R. BARCLAY SURRICK, J.**

---

[9] We further note that although the parties have not addressed this issue, courts applying Pennsylvania law have held that coverage under all-risk policies only applies to losses that are fortuitous, *i.e.,* the result of an accident.  *See Fry v. Phoenix Ins. Co*., 54 F. Supp. 3d 354, 365–66 (E.D. Pa. 2014) ("Under Pennsylvania law as predicted by the United States Court of Appeals for the Third Circuit, there is an implied exclusion in every all-risk insurance policy for losses that are not fortuitous." (citing *PECO Energy Co. v. Boden*, 64 F.3d 852, 858 (3d Cir.1995))); *see also Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007) ("We have established that the term 'accident' within insurance polices refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co*., 908 A.2d 888, 898 (Pa. 2006))); *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am., Intermetal Mexicana, S.A*., 866 F.2d 71, 75 (3d Cir. 1989) ("The term all-risk has been said to be somewhat misleading.  All-risk is not synonymous with all loss." (citations and internal quotations omitted)).

    As noted above, the Harleysville Policy defines "loss" as "***accidental*** loss or damage."  (Policy § F.6. (emphasis added).)  Numerous courts have held that losses caused by faulty workmanship are not "occurrences" or "accidents" because they are not fortuitous, and extending coverage to such claims would "convert a policy for insurance into a performance bond."  *See Kvaerner*, 908 A.2d at 899; *see also Millers Cap. Ins. Co. v. Gambone Bros. Dev. Co*., 941 A.2d 706, 713 (Pa. Super. Ct. 2007) (citing *Kvaerner* and noting that "natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship . . . cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident'"); *Bomgardner v. State Farm Fire & Cas*., No. 10-1287, 2010 WL 3657084, at *4 (E.D. Pa. Sept. 14, 2010) (holding that the fact that subcontractor was responsible for faulty workmanship "does not convert the claim into one based on an 'accident'").  To the extent that lack of fortuity is an additional reasonable basis to deny coverage, even if Harleysville did not rely on that basis, it defeats Plaintiff's allegations of bad faith.